■ WILMINGTON TRUST COMPANY, as Issuer Trustee of FMAC Loan Receivable Trust 1997-C, et al., Respondents, v MICHAEL L. STRAUSS, Appellant. MICHAEL L. STRAUSS, Individually and as Assignee of Westwind Group Holdings, Inc., et al., Counterclaim Plaintiffs-Appellants, v BAY VIEW FRANCHISE MORTGAGE ACCEPTANCE COMPANY et al., Counterclaim Defendants-Respondents, et al., Counterclaim Defendants. [847 NYS2d 21]—

Judgment, Supreme Court, New York County (Bernard J. Fried, J.), entered February 1, 2007, dismissing defendant/counterclaim-plaintiff Michael L. Strauss's counterclaims against counterclaim defendants Bay View Franchise Mortgage Acceptance Company (Bay View) and Joseph Wolnick, pursuant to an order, same court and Justice, entered October 31, 2006, which, to the extent appealed from as limited by the brief, granted Bay View and Wolnick's motion for summary judgment dismissing the counterclaims against them, and granted the motion of plaintiffs/counterclaim-defendants Wilmington Trust Company and Capmark Finance Inc. for summary judgment on the issue of liability under the second guaranty and to dismiss the counterclaims against them, unanimously affirmed, with costs. Appeal from the order unanimously dismissed, without costs, as subsumed in the appeal from the judgment.

Judgment, same court and Justice, entered May 22, 2007, awarding plaintiffs judgment in the amount of $1,800,000, plus prejudgment interest, pursuant to an order, same court and Justice, entered May 4, 2007, which, to the extent appealed from as limited by the brief, directed that prejudgment interest be included in the judgment to be entered in plaintiffs' favor on the claim relating to the second guaranty, unanimously affirmed, with costs. Appeal from the order unanimously dismissed, without costs, as subsumed in the appeal from the judgment.

At issue are certain provisions of a loan restructuring agreement (LRA) entered into between defendant/counterclaim-

plaintiff Michael L. Strauss, the majority owner and director of counterclaim plaintiffs the Westwind Companies (collectively Westwind), which operated Burger King franchises, and, inter alia, counterclaim defendant Bay View, as servicer of the loan. Pursuant to the LRA, Bay View agreed, inter alia, to reduce the outstanding principal of a prior loan and to make a loan to Westwind in the amount of $2,600,000. The prior loan had been assigned to the trust plaintiffs as part of a securitization transaction. In connection with the LRA, Strauss also executed an Amended and Restated Guaranty Agreement, known as the Second Guaranty, pursuant to which he guaranteed repayment of $1,800,000 of the loan made on behalf of the trusts.

The original loan agreement required that all Westwind's proceeds from sales and other receipts and revenues ultimately be deposited into a "concentration account" consisting of various segregated subaccounts, and that the funds be distributed first to the subaccount for the payment of all amounts due the bank and second to the subaccount for the payment of all amounts due the lender (plaintiffs), only after which the remaining amounts would be transferred to the operating subaccount and made available to Westwind. The LRA reversed this order of priority and required Westwind to pay its "Approved Budgeted Expenses," which included the fees due under the franchise agreements with Burger King, *before* transferring funds to a "Payment Account" from which it would pay the parties identified in section 5.3, a "waterfall" provision that listed the parties in descending order of priority. However, after the execution of the LRA, Westwind continued to use a concentration account instead of the payment account, and plaintiffs continued to be paid before Burger King was paid.

When Westwind was unable to meet its obligations to Burger King, its assets were sold, and plaintiffs received $3 million toward the repayment of the loans. They commenced this action to recover, inter alia, on the $1,800,000 guaranty executed by Strauss. Strauss counterclaimed against the trusts and their servicer, Capmark, formerly known as GMAC Commercial Mortgage Corporation (GMAC), Bay View and Wolnick, a member of both Bay View's and Westwind's boards of directors, for, inter alia, breach of contract based on GMAC's failure to pay Burger King before plaintiffs, and breach of fiduciary duty, and sought a judgment declaring that the original guaranty and the Second Guaranty were invalid and unenforceable.

Based on the unambiguous provisions of the LRA, the court properly determined that plaintiffs and Bay View did not breach the agreement by failing to direct the bank to release the funds

to pay Burger King. Pursuant to section 5.1 (b), it was the responsibility of Westwind, not of plaintiffs or of Bay View, to pay Burger King. Pursuant to section 5.3, after Westwind's funds were transferred, the trusts had the absolute right to accept and apply these funds for repayment of Westwind's debts to them, without regard to whether Westwind had paid Burger King. Indeed, in transferring funds to the concentration account, Westwind implicitly represented that the funds were "net of budgeted expenses," including payments to Burger King.

Contrary to Strauss's contention that plaintiffs also breached the LRA by preventing Westwind from closing money-losing stores, section 10.2 (c) of the LRA required Westwind to obtain GMAC's permission to close stores and provided that the decision rested in GMAC's sole discretion (*see State St. Bank & Trust Co. v Inversiones Errazuriz Limitada*, 374 F3d 158, 170 [2d Cir 2004], *cert denied* 543 US 1177 [2005]). In any event, the court properly determined that GMAC did not improvidently exercise its discretion in refusing permission, particularly because the LRA also required Westwind to provide substitute collateral in connection with any restaurant closing and Westwind neither alleged nor submitted evidence that it had offered to provide substitute collateral. Further, Strauss testified that Westwind could not afford to pay the costs of closing restaurants.

Strauss contends that since the $3 million plaintiffs received from the bankruptcy sale of Westwind's assets was more than his $1.8 million liability under the Second Guaranty, they should have applied the proceeds against the Second Guaranty, reducing his liability thereunder to zero, pursuant to the "waterfall" provision of the LRA. He concedes that the "waterfall" provision ceased to govern once an event of default occurred and the restructured notes were declared due and payable pursuant to section 12.2 but argues that nevertheless it should govern because the event of default was improperly caused by GMAC. We reject the argument that GMAC improperly caused the event of default.

The court properly dismissed the counterclaims against Wolnick since the record fails to support the contention that Wolnick breached a fiduciary duty or a duty of loyalty.

The court properly found that the Second Guaranty did not preclude an award of interest.

We have considered Strauss's remaining contentions and find them without merit. Concur—Andrias, J.P., Nardelli, Buckley, Sweeny and Malone, JJ.